**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DANIEL S. GRIFFIN,

    Plaintiff,

        v.

MUNICIPALITY OF KINGSTON, et al.,

    Defendants.

CIVIL ACTION NO. 3:08-cv-2290

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court is a motion to dismiss Counts I and VII of Plaintiff's Complaint filed by Defendants Municipality of Kingston ("Kingston"), Paul Keating, Keith Keiper, Kingston Civil Service Commission ("Commission"), John Judge, Fred Case, and Nancy Cooper (Doc. 5) pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants also ask the Court to dismiss the Commission and Defendants Keating, Keiper, Judge, Case, and Cooper in their official capacities. Alternatively, Defendants move for a more definite statement of Count I pursuant to Federal Rule of Civil Procedure 12(e). For the reasons detailed below, Defendants' motion to dismiss will be denied as to Count I, but granted as to Count VII and Defendants Commission, and Keating, Keiper, Judge, Case, and Cooper in their official capacities. Defendants' motion for a more definite statement will be denied as moot.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

The facts as alleged in Plaintiff's Complaint are as follows. Plaintiff was a Detective

with the Kingston Police Department and sustained an on-the-job injury on January 17, 2006. (Compl. ¶¶ 13-15, Doc. 1.)  This disability affected Plaintiff's ability to sleep and work.  (*Id.* ¶ 50.)  While on leave of absence because of his injury, Plaintiff received, and continues to receive, Worker's Compensation benefits.  (*Id.* ¶¶ 15, 28.)  Plaintiff was to receive Heart and Lung benefits simultaneously with Worker's Compensation.[1]  (*Id.* ¶ 29.)

In March of 2006, Defendant Kingston posted an announcement for the position of Sergeant.  (*Id.* ¶ 16.)  Plaintiff took and passed a written examination on April 27, 2006, and an oral examination on May 11, 2006, and fulfilled the requirements to be certified on the eligibility list for promotion.  (*Id.* ¶¶ 17-18.)  On March 23, 2007, Defendant Kingston posted an opening for the position of Sergeant.  (*Id.* ¶ 21.)  The eligibility requirements included being physically fit and able to perform the duties of Sergeant without regard to a person's disability.  (*Id.* ¶ 22.)  Plaintiff applied for, but was denied, certification on March 28, 2007. (*Id.* ¶ 19.)  Defendant Kingston informed Plaintiff that he was denied certification because of his inactive status.  (*Id.*)

Plaintiff filed a timely complaint with the Pennsylvania Human Relations Commission. (*Id.* ¶ 4.)  On April 17, 2007, Plaintiff cross-filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging a violation of the Americans with Disabilities Act ("ADA").  (*Id.* ¶¶ 4, 26.)

---

[1]    Plaintiff's Complaint states "[b]y law he [Plaintiff] was to receive Heart & Lung Benefits simultaneously with the Worker's Compensation," but also states "[t]hey have discontinued his Heart & Lung Benefits."  (Compl. ¶¶ 29, 34.)  It is unclear whether Plaintiff is asserting that he was entitled to Heart and Lung benefits but never received them, or whether he received them, and was entitled to continue receiving them, but they were discontinued.

At a hearing on April 27, 2007, Defendant Commission and Defendants Judge, Case, and Cooper, members of the Commission, advised Plaintiff that he was being denied further consideration for certification because he was disabled. (*Id.* ¶ 20.) By letter dated May 2, 2007, Defendant Kingston informed Plaintiff that certification was denied because of his disability. (*Id.* ¶ 24.)

After Plaintiff made his EEOC complaint, Defendants allegedly retaliated by subjecting Plaintiff to a hostile work environment, culminating in his termination. (*Id.* ¶ 27.) Defendants Keating, Administrator of Kingston, and Keiper, Chief of Police of Kingston, caused false criminal complaints to be filed against Plaintiff, caused Plaintiff's house to be searched and personal property to be seized, and discontinued Plaintiff's medical insurance and Heart and Lung benefits. (*Id.* ¶¶ 7-8, 31-34, 67.) Thereafter, Plaintiff was arrested. (*Id.* ¶ 67.) Defendant Commission refused to allow Plaintiff to reapply for a position with the Kingston Police Department.[2] (*Id.* ¶ 38.) Defendant Commission and Defendants Judge, Case, and Cooper decertified Plaintiff from his position.[3] (*Id.* ¶ 39.)

Defendant Keating, Administrator of Kingston, terminated Plaintiff on December 3, 2007. (*Id.* ¶ 36.) Plaintiff alleges that only the Mayor could properly have fired him because he was a member of the Civil Service. (*Id.* ¶ 35.) Before being terminated, Plaintiff was not given written warning or a pre-disciplinary conference on any relevant allegations. (*Id.* ¶¶ 41-42.)

---

[2] In the context of the surrounding paragraphs, it is unclear whether Plaintiff refers to the Sergeant or Detective position.

[3] Again, it is unclear whether Plaintiff refers to the Sergeant or Detective position.

As a result of Defendants' hostility culminating in the loss of his job, Plaintiff alleges he suffered, and continues to suffer, great bodily pain and mental anguish, public humiliation, embarrassment, and loss of his reputation. (*Id.* ¶ 44.) Because of these injuries, Plaintiff sought medical treatment, which may continue indefinitely. (*Id.* ¶ 46.) Plaintiff also suffered monetary loss in the form of wages, pension contributions, and social security contributions, and monetary loss in the form of payments for attorney's, investigation, and court reporter fees to defend himself against Defendants' acts. (*Id.* ¶¶ 44-45.)

Plaintiff received a right-to-sue letter on November 25, 2008. (*Id.* ¶ 4.) Plaintiff filed a complaint containing seven counts against all of the Defendants on December 22, 2008. (*Id.*, ¶¶ 47-70.) The first four claims are made under federal law, and the last three are made under Pennsylvania state law. (*Id.* ¶¶ 1, 47-70.)

Counts I and II, raised pursuant to 42 U.S.C. § 1983, allege Defendants violated Plaintiff's due process and equal protection rights under the Fourteenth Amendment. (*Id.* ¶¶ 47-48.) Counts III and IV, raised pursuant to the ADA, 42 U.S.C. § 12101 *et seq.*,[4] allege unlawful discrimination based on Plaintiff's disability, and unlawful retaliation in response to Plaintiff's EEOC filing. (*Id.* ¶¶ 1, 49-62.) Count V alleges wrongful discharge in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(a).[5] (*Id.* ¶¶ 1, 64.) Count VI alleges

---

[4]     The only citation Plaintiff makes in his Complaint to the statute is "42 U.S.C. § 10221." (Compl. ¶ 1.) This statute, however, relates to nuclear waste. The Court will assume Plaintiff intended to cite 42 U.S.C. § 12101 *et seq.*

[5]     The only citation Plaintiff makes in his Complaint to the statute is "42 P.S. § 955(a)." (Compl. ¶ 1.) The Court will assume, however, that Plaintiff intended to cite Title 43, not Title 42. Title 42 concerns the judiciary and judicial procedure and does not contain a § 955(a).

4

the Defendants engaged in common law conspiracy. (*Id.* ¶ 67.) Count VII raises a claim for intentional infliction of emotional distress ("IIED"). (*Id.* ¶¶ 69-70.)

Defendants filed a motion on March 2, 2009, to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and, alternatively, for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). (Mot. ¶¶ 4-18, Doc. 5.) The motion to dismiss contains three arguments. (*Id.*) The first asks that Plaintiff's claims against Defendants Commission, Keating, Keiper, Judge, Case, and Cooper, in their official capacities only, be dismissed because they are redundant with Plaintiff's claims against Kingston. (*Id.* ¶¶ 4-9.) The second argument asks that Count I be dismissed because it fails to sufficiently allege violation of Plaintiff's substantive or procedural due process rights under the Fourteenth Amendment. (*Id.* ¶¶ 10-11.) The third argument asks that Count VII be dismissed because it fails to sufficiently allege IIED. (*Id.* ¶¶ 17-18.) The motion for a more definite statement asks that Plaintiff be required to re-plead Count I because Defendants cannot determine whether Plaintiff is alleging a violation of his substantive or procedural due process rights. (*Id.* ¶¶ 12-16.)

Defendants filed a brief in support of their motion on March 16, 2009. (Doc. 6.) Plaintiff filed a brief in opposition on April 1, 2009. (Doc. 9.) Defendants then filed a brief in reply on May 11, 2009. (Doc. 12.) Accordingly, Defendants' motion has been briefed and is currently ripe for disposition.

## LEGAL STANDARDS

### I.      Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in

whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, Plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred).  In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, ----, 127 S.Ct. 2197, 2200 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss.  *Id.*  The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse*

6

*v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *See id.* The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## II.   Federal Rule of Civil Procedure 12(e)

Federal Rule of Civil Procedure 12(e) provides that "[i]f a pleading to which a responsive pleading is permitted is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). Generally, motions for a more definite statement are only granted when the pleading is "'so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith without prejudice to itself.'" *Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc.*, No. CIV.A. 00-CV-3683, 2000 WL 1780231, at *2 (E.D. Pa. Dec. 4, 2000) (quoting *Sun Co. v. Badger Design & Constructors*, 939 F. Supp. 365, 368 (E.D. Pa. 1996)). "'Motions for a more definite statement are generally disfavored, and should [be granted only] if a pleading is unintelligible, making it virtually impossible for the opposing party to craft a responsive pleading.'" *Kasteleba v. Judge*, No. 3:05-CV-1739, 2006 U.S. Dist. LEXIS 24493, at *10 (M.D. Pa. Apr. 24, 2006) (Kosik, J.) (quoting *Synagro–WWT, Inc. v. Rush Twp.*, 204 F. Supp. 2d 827, 849 (M.D. Pa. 2002) (McClure, J.)).

7

**DISCUSSION**

**I.    Motion to Dismiss Pursuant to Rule 12(b)(6)**

    A.    <u>Claims Against Defendant Commission, and Defendants Keating, Keiper, Judge, Case, and Cooper in Their Official Capacities</u>

    *1.    Defendant Commission*

Defendants argue that Defendant Commission should be dismissed as a party from all counts of Plaintiff's Complaint because the Commission is redundant with Defendant Kingston.  (Defs.' Br. in Supp. Of Mot. 7 , Doc. 6.) (hereinafter "Defs.' Br.")

In the context of a motion for summary judgment, this Court has previously held that when a Civil Service Commission is an administrative arm or sub-unit of a municipality, it is not a separate legal entity from the municipality.  *Sibio v. Borough of Dunmore*, No. 3:06-CV-0995, 2007 WL 1173769, at *3 (M.D. Pa. Apr. 18, 2007).  In his Complaint, Plaintiff alleges the Commission is "duly organized under the auspices of the Defendant Kingston."  (Compl. ¶ 9.)  Therefore, as an arm of the Municipality, the Commission is not a separate entity and the claims against it are redundant.  Accordingly, because Plaintiff does not state a claim against the Commission as a separate legal entity, Defendants' motion to dismiss the Commission as a party to all seven Counts will be granted.

    *2.    Defendants Keating, Keiper, Judge, Case, and Cooper in Their Official Capacities*

In § 1983 actions, the U.S. Supreme Court distinguishes between suits against individuals in their official and individual capacities, reasoning that official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (quoting *Monell v.*

8

*New York City Dep't of Soc. Services*, 436 U.S. 658, 690 n.55 (1978)).  Public officials acting in their official capacities are not liable under § 1983 because they assume the identity of their government employer.  *Bennett v. City of Phila.*, No. 07-CV-2794, 2008 WL 4211701, at *5 (E.D. Pa. Sept. 9, 2008).

In Counts I and II, Plaintiff's Complaint makes claims against Defendants Keating, Keiper, Judge, Case, and Cooper in their official capacities.  (Compl. ¶¶ 47, 48.)  However, Plaintiff has abandoned any claims against these individuals in their official capacities.  (Pl.'s Br. 7.)  This Court has previously dismissed claims against individuals in their official capacities when the plaintiff acknowledged that he was not pursuing them in their official capacities.  *See Campbell v. West Pittston Borough*, No. 3:06-CV-0387, 2006 WL 1892709, at *4 (M.D. Pa. July 10, 2006). Accordingly, because Plaintiff abandons his official capacity claims against Defendants Keating, Keiper, Judge, Case, and Cooper, Defendants' motion to dismiss the official capacity claims of Counts I and II will be granted.

B.      Section 1983 Substantive and Procedural Due Process Claims in Count I

Defendants next ask the Court to dismiss the substantive and procedural due process claims in Count I of Plaintiff's Complaint.  (Mot. ¶¶ 10-11.)  Plaintiff concedes that he does not allege a substantive due process claim and states that Count I is made "solely on procedural due process and not as substantive due process." (Pl.'s Br. 8.) Plaintiff therefore abandons a substantive due process claim.

As to Plaintiff's procedural due process claim, Defendants argue that government employment is not a property right.  (Defs.' Br. 5.)  And because government employment is not a property right, Defendants conclude that termination of government employment is not protected by the requirements of procedural due process.  (*Id.* at 4.)

The Court will now address whether Plaintiff states a claim for procedural due process under § 1983. The "initial inquiry [in a § 1983 action] must focus on whether the two essential elements ... are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *rev'd in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

    1.    *"Persons" Who Are "Acting Under Color of State Law"*

The first question is whether the Defendants, including the Municipality, are "persons" who are "acting under color of state law." A municipality can be considered a "person" for § 1983 actions. *Monell*, 436 U.S. at 690 (1978) ("Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies."). Individual officers acting in their official capacities are considered to act under color of law even if they are not executing state policy or are breaking state law. *See Monroe v. Pape*, 365 U.S. 167, 184 (1961), *rev'd in part on other grounds by Monell*, 436 U.S. at 663.

In his Complaint, Plaintiff alleges Defendants Commission, Judge, Case, and Cooper decertified him from his position.[6] (Compl. ¶ 39.) Plaintiff also alleges Defendants Keating and Keiper took retaliatory actions against him for filing a complaint with the EEOC. (*Id.* ¶¶ 30-36.) Because it is possible that Defendant Municipality can be considered a "person," Defendants Judge, Case and Cooper are members of the Commission, and Defendants Keating and Keiper are the Administrator and Chief of Police of Kingston, respectively,

---

[6]    As noted above, in the context of the surrounding paragraphs, it is unclear whether Plaintiff refers to the Sergeant or Detective position.

Plaintiff's Complaint states a claim that they are "persons" who are "acting under color of state law."

2.      *Deprivation of Rights Secured by the Fourteenth Amendment*

The second question is whether Plaintiff states a claim that the Defendants' conduct deprived him of rights, privileges, or immunities secured by the Constitution.  Plaintiff claims Defendants violated his procedural due process rights under the Fourteenth Amendment. (Compl. ¶ 47.)  The United States Court of Appeals for the Third Circuit employs a two-stage analysis when considering a procedural due process claim made under § 1983: (1) whether the individual interests asserted fall within the Fourteenth Amendment's protection of "life, liberty, or property"; and (2) whether the procedures available provided Plaintiff with "due process of law."  *Alvin v. Smith*, 227 F.3d 107, 116 (3d Cir. 2000); *see also Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).

a.      *A Property Interest*

1.      *Employment with the Police Department*

It appears from Plaintiff's Complaint that he considers his employment with the Police Department to be a property interest.  (*See* Compl. ¶¶13-14, 35.)  When a plaintiff asserts a property interest, the Court must look to state law to determine whether the property interest is protected by the Fourteenth Amendment.  *Dee*, 549 F.3d at 229.  "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 540 (1985) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  It is well settled that a plaintiff has a valid property interest in his employment when he can demonstrate that a "state statute,

11

regulation, or agreement between the employer and employee establishes such an interest." *Boykin v. Bloomsburg Univ.*, 893 F. Supp. 378, 395 (M.D. Pa. 1995) (Muir, J.) (citing *Albrechta vs. Borough of White Haven*, 810 F. Supp. 139, 142 (M.D. Pa. 1992) (Kosik, J.)).

Pennsylvania statute 53 P.S. § 46190 gives municipal police officers property interests in their jobs. *See* 53 P.S. § 46190 (West 2008). The statute provides that "[n]o person employed in any police ... force of any borough shall be suspended, removed or reduced in rank except for the following reasons," and then enumerates six reasons. *Id.* The six reasons are:

> (1) Physical or mental disability affecting his ability to continue in service, in which cases the person shall receive an honorable discharge from service.
>
> (2) Neglect or violation of any official duty.
>
> (3) Violation of any law which provided that such violation constitutes a misdemeanor or felony.
>
> (4) Inefficiency, neglect, intemperance, immorality, disobedience of orders, or conduct unbecoming an officer.
>
> (5) Intoxication while on duty.
>
> (6) Engaging or participating in conducting of any political or election campaign otherwise than to exercise his own right of suffrage.

*Id.*

In his Complaint, Plaintiff alleges he was terminated in retaliation for filling a complaint with the EEOC. (Compl. ¶ 40.) Plaintiff does not allege he was terminated for any of the six legitimate reasons in 53 P.S. § 46190. (*See id.*) Defendants do not contest this. (*See* Defs.' Br.) Therefore, because an interest is established by statute, Plaintiff states a claim to a

property interest in his employment.

Defendants argue that "public employment is, at best, a 'wholly state-created contract right,'" which the Third Circuit Court of Appeals does not recognize as implicating the due process protections of the Fourteenth Amendment. (Defs.' Br. 5 (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 143 (3d Cir. 2000).) In addition to quoting from *Nicholas*, Defendants also cite *Homar v. Gilbert*, 63 F. Supp. 2d 559, 576 (M.D. Pa. 1999) (Vanaskie, C.J.) in support of their argument. (*Id.* at 5-6.) The *Homar* and *Nicholas* cases , however, apply only to substantive, not procedural, due process protection. As discussed above, Plaintiff is not pursuing a substantive due process claim, so they are not relevant. In fact, in *Nichola*s, the Third Circuit Court of Appeals held that property interests created by state law are entitled to procedural due process protection, although they may or may not be entitled to substantive due process protection. *See Nicholas*, 227 F.3d at 140. Consequently, *Nicholas* actually supports Plaintiff's allegation of a property interest subject to procedural due process protection.

2. *Benefits*

In addition to termination from the Detective position, Plaintiff alleges deprivation of property rights in the form of employment benefits. (Compl. ¶¶ 33-34, 40, 47.) Defendants limit their response to pension benefits, and argue they are not a property right. (Defs.' Br. 6.)

Courts differentiate between an employee's claimed property interest in an employment benefit and an interest in the employment itself. *See, e.g., Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1274-75 (6th Cir. 1988) ("[A]n interference with a property interest in

a pure benefit [there, accumulated sick leave] of employment, as opposed to an interest in the tenured nature of the employment itself, is an interest that can be and should be redressed by a state breach of contract action and not by a federal action under section 1983."). "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007) (quoting *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972)). To be an entitlement, there must be an obligation to pay the benefit. *Id.* at 207.

Pennsylvania statute 53 P.S. § 637, the Heart and Lung Act, gives municipal police officers a property interest in, and an entitlement to, disability benefits for temporary injuries by obligating municipalities to pay them. *See* 53 P.S. § 637 (West 2008). The statute provides:

> [A]ny policeman ... of any county, city, borough, town or township ... who is injured in the performance of his duties ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid ... by the county, township or municipality, by which he is employed, his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased. All medical and hospital bills, incurred in connection with any such injury, shall be paid ... by such county, township or municipality.

*Id.* at § 637(a); *see also Kegolis v. Borough of Shenandoah, Pa.*, No. 3:03-CV-0602, 2006 WL 3814311, at *5 n.10 (M.D. Pa. Dec. 27, 2006) ("An injured police officer receiving Heart and Lung Act benefits has a constitutionally protected property right in those benefits.").

However, Pennsylvania courts have held that a statutory right to Heart and Lung benefits continues only during an officer's employment. The Heart and Lung Act does not confer rights upon injured officers that prohibit a municipality from firing, furloughing, or

involuntarily retiring them in accordance with 53 P.S. § 46190. *Camaione v. Borough of Latrobe*, 567 A.2d 638, 641 (Pa. 1989). "All that the Heart and Lung Act provides is that *while* an officer is a member of the police force his temporary incapacity status cannot be changed without a due process hearing." *Id.* (emphasis added).

In his Complaint, Plaintiff alleges he received an on-the-job injury and was entitled to receive Heart and Lung benefits, but Defendants "discontinued" them. (Compl. ¶¶ 15, 29, 34.) The Complaint makes it somewhat unclear whether the benefits were discontinued before his termination or at the same time as and in consequence of his termination. (*Id*. ¶ 34.) Accepting at this stage all inferences favorable to Plaintiff, the Court interprets "discontinued" to mean that Plaintiff's benefits ceased during his employment with the Police Department and finds that he states a claim to a valid property interest in Heart and Lung benefits subject to procedural due process protection.

However, Plaintiff fails to state claims for procedural due process protection of his pension, Social Security, and medical insurance benefits. Pennsylvania statute 53 P.S. § 767 requires police departments with three or more full-time members to establish a police pension fund. *See* 53. P.S. § 767 (West 2008). Similarly, Pennsylvania statute 53 P.S. § 46131 allows departments with less than three full-time officers to establish police pension funds. *See* 53 P.S. § 46131 (West 2008). Both statutes require that if established, benefits of the funds must be paid out to officers who were honorably discharged. *See* 53 P.S. § 767 (stating that benefits shall be paid to those officers "as shall receive honorable discharge therefrom by reason of age and service, or disability"); *id.* at § 46131 (stating that benefits shall be paid to those officers "as shall receive honorable discharge therefrom by reason of

age or disability").

In addition to entitlements created by statute, obligations to pay can be created by *some* contracts with state entities. *See Linan-Faye Constr. Co. v. Hous. Auth.*, 49 F.3d 915, 932 (3d Cir. 1995). The Third Circuit Court of Appeals has recognized two general types of contract rights that constitute protected property interests:

> [T]he first type arises where the contract confers a protected status, such as those characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits. The second, albeit related type of property interest arises where the contract itself includes a provision that the state entity can terminate the contract only for cause.

*Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991) (internal citations and quotation marks omitted).

Plaintiff alleges deprivation of "participat[ion]" in a pension plan. (Compl. ¶¶ 56, 62, 66.) Plaintiff does not allege, however, that he was honorably discharged for his disability or that he had a contract with the municipality for a pension that included a "for cause" provision. Without honorable discharge or a contract that can only be terminated "for cause," Plaintiff does not have an entitlement to a pension because the municipality is not obligated to pay it. Plaintiff does not, therefore, state a claim to procedural due process protection of a pension.

Likewise, Plaintiff does not claim statutory or contractual entitlement to medical insurance benefits or Social Security contributions. (*See* Compl.) This Court has found no statute granting entitlement to them. Plaintiff does not, therefore, state a property interest in medical insurance benefits or Social Security contributions.

16

*b.*      *Procedural Due Process of Law*

Because Plaintiff states a claim to a valid property interest in his employment, the Court must next determine whether Plaintiff alleges that he was deprived of his job without due process of law. The U.S. Supreme Court has said that state law provides only the substance of a property interest, not the procedure required for its deprivation. *Loudermill,* 470 U.S. at 541. "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

As the Third Circuit Court of Appeals has noted, "[t]here is no rote formula for sufficient protections under the Due Process Clause." *Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007). Rather, courts utilize the factors set forth by the U.S. Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to engage in a case-by-case inquiry. The *Wilson* court articulated the inquiry as follows:

> At a minimum, due process requires notice and a hearing.... However, when that notice and hearing must be provided and how intensive the hearing must be is a determination that depends on the balancing of three interests: (1) the private interest at stake, (2) the risk of error in the procedure used compared with the degree of improved accuracy that additional procedures would provide, and (3) the government's interest.

*Wilson*, 475 F.3d at 178 (citing *Reichley v. Pa. Dep't of Agric.*, 427 F.3d 236, 247 (3d Cir. 2005); *Mathews*, 424 U.S. at 334-35.

Weighing the *Mathews* factors, the U.S. Supreme Court in *Loudermill,* 470 U.S. at 546, held that, prior to termination, "the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." As discussed above, Plaintiff states a claim to

17

a valid property interest in a position with the Police Department. Plaintiff alleges he was not given "written warning" or a "pre-disciplinary conference" before being terminated. (Compl. ¶ 41.) Nor was he given notice and an opportunity to be heard prior to termination. (*Id.* ¶ 42.) Following *Wilson* and *Loudermill*, the Court finds that Plaintiff states a claim that he was deprived of a property right in his employment without due process.

Plaintiff also states a claim to a valid property interest in his Heart and Lung benefits. Although the Court has found little case law on constitutional due process requirements prior to termination of Heart and Lung benefits, the Pennsylvania Commonwealth Court has held, and this Court agrees, that *Loudermill* requires at least reasonable pre-termination notice and an adequate opportunity to be heard. *Civil Serv. Comm'n v. Goldman*, 621 A.2d 1142, 1145 (Pa. Commw. Ct. 1993). Because it can be fairly inferred from Plaintiff's Complaint that he was afforded *no* process prior to the discontinuance of his Heart and Lung benefits, he makes sufficient allegations to survive a motion to dismiss.

In summary, the Court finds that Count I of Plaintiff's Complaint states a claim for deprivation of property rights in public employment and Heart and Lung benefits without due process of law. Accordingly, Defendants' motion to dismiss Count I will be denied.

C.     <u>Intentional Infliction of Emotional Distress in Count VII</u>

Finally, Defendants move to dismiss the state law claim for IIED in Count VII of Plaintiff's Complaint. (Mot. ¶¶ 17-18.) The Pennsylvania Supreme Court has never explicitly recognized IIED as a cause of action, but it has cited Restatement (Second) of Torts § 46 as setting forth the minimum elements that would be necessary to sustain such a cause of action. *See Toney v. Chester County Hosp.*, 961 A.2d 192, 201 (Pa. Super. Ct. 2008) (citing

*Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000)). For the purpose of analysis when considering a motion to dismiss an IIED claim, Pennsylvania courts apply Restatement (Second) § 46(1) as the appropriate legal standard. *Id.* at 201 (citing *Reardon v. Allegheny Coll.*, 926 A.2d 477, 487 n.12 (Pa. Super. Ct. 2007)).

To prove a claim of IIED, the following elements must be established: (1) the conduct must be extreme in degree and outrageous in character; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe. *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. 1997). The Court must determine, in the first instance, whether the alleged conduct could reasonably be regarded as so extreme and outrageous as to permit recovery. *Swisher v. Pitz*, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005). The pleading requirements for extreme and outrageous conduct are:

> [T]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society ... [I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

*Toney*, 961 A.2d at 202 (quoting *Reardon*, 926 A.2d at 488).

Generally, "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous'!" *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997). In addition, to prevail on an IIED claim, a plaintiff must provide competent medical evidence to prove the existence of emotional distress. *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987); *see Hunger v. Grand Cent. Sanitation*, 670 A.2d 173 (Pa. Super. Ct.

1996) (holding that to prevail on an IIED claim, a plaintiff must prove the defendant's conduct was extreme and outrageous and that the plaintiff suffered a medically confirmed injury).

Outside of the employment context, the filing of false charges and false arrest are generally not found so extreme and outrageous as to permit recovery on an IIED claim. Even if false, "[m]ere allegations of criminal conduct are insufficient to establish that a person acted in an extreme or outrageous manner." *U.S. ex rel. Magid v. Wilderman*, No. Civ.A.96-CV-4346, 2005 WL 469590, at *5 (E.D. Pa. Feb. 28, 2005) (citing cases); *but see Gleeson v. Robson*, Nos. 3:CV-02-1747, 3:CV-03-0552, 2005 WL 1210948, at *24-25, 30 (M.D. Pa. May 6, 2005) (Vanaskie, J.) (citing cases in which the filing of false charges and false arrest were not sufficient to allow an IIED claim to move forward, but refusing to grant summary judgment to defendant police Detective on false arrest and IIED claims because the "nature as well as the number" of charges "suggest[ed] an intent to sensationalize the issue").

Within the employment context, the Third Circuit Court of Appeals has stated "it is extremely rare to find conduct ... that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (citing *Rinehimer v. Luzerne County Cmty. Coll.,* 539 A.2d 1298, 1305 (Pa. Super. Ct. 1988)). Dismissal alone cannot provide the basis for recovery. *Id*.

As one district court observed, "[c]ourts routinely reject claims of intentional infliction of emotional distress which arise out of allegedly improper employment practices, including cases of unlawful discrimination." *Timm v. Manor Care, Inc.*, No. 06-cv-0152, 2006 U.S. Dist. LEXIS 11342, at *17-18 (W.D. Pa. Mar. 20, 2006) (in the context of age discrimination). For

example, in *Provence v. Avon Grove Charter School*, No. 07-659, 2008 WL 2928314, at *11 (E.D. Pa. July 28, 2008), a cafeteria worker who suffered an on-the-job injury made claims against her employer for violation of the ADA and IIED.  She alleged the employer made a plan to get rid of her, contrived excuses to carry out that plan, and interviewed replacements before she left.  *Id.*  The court held that the IIED claim could not withstand summary judgment because it did not rise to the level of extreme or outrageous conduct necessary to sustain an IIED claim.  *Id.*  In another case, a corrections officer who was injured on the job while restraining a prisoner made ADA and IIED claims against his employer.  *See Majewski v. Luzerne County*, No. 3:05cv2396, 2007 WL 1074769, at *10 (M.D. Pa. Apr. 9, 2007) (Munley, J.).  He claimed his employer discriminated against him because of his disability and perceived alcoholism, then manipulated a breathalyzer test and conspired to terminate him.  *Id.*  The court held the IIED allegations were not sufficiently outrageous to withstand a motion to dismiss.  *Id.*  Finally, in *Clark v. Township of Falls*, 890 F.2d 611 (3d Cir. 1989), a Pennsylvania police officer made an IIED claim based on false charges, "disparaging reports" in public, demotions in responsibilities, and limitations made on his speech at Township Board meetings.  The Third Circuit Court of Appeals reversed a verdict for the officer and granted a motion for judgment not withstanding the verdict because the conduct was not extreme and outrageous.  *Id.* at 624.

Moreover, the Pennsylvania Supreme Court has stated the "outrageousness" threshold is so high that "'the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee.'" *Hoy v. Angelone*,

720 A.2d 745, 754 (Pa. 1998) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1487 (3d Cir. 1990)). Plaintiff alleges Defendants' conduct in discriminating against him and retaliating against him for his filings with the EEOC, culminating in his termination, caused him emotional distress which required him to seek medical treatment. (Compl. ¶¶ 20, 26-27, 40, 69.) Based on the foregoing cases, the Court finds that Plaintiff does not state a claim for the "outrageousness" necessary to provide a basis for recovery for IIED. Accordingly, Defendants' motion to dismiss Count VII will be granted.

## II.     Motion for a More Definite Statement Pursuant to Rule 12(e)

Defendants move for a more definite statement because they cannot "reasonably determine whether Plaintiff is alleging a substantive or procedural due process violation." (Mot. ¶ 15.) As discussed above in section I., part B., Plaintiff concedes that in Count I he does not allege a substantive due process claim, but only a procedural due process claim. (*See* Pl.'s Br. 7.) Accordingly, the Court will deny Defendants' motion as moot.

## CONCLUSION

For the reasons discussed above, the motion to dismiss filed by Defendants (Doc. 5.) will be granted as to Defendant Commission, and as to Defendants Keating, Keiper, Judge, Case, and Cooper in their official capacities. The motion will also be granted as to Count VII, but denied as to the procedural due process claim in Count I. Defendants' motion for a more definite statement of Count I will be denied as moot. Plaintiff's claims (Counts I, II, III, IV, V, and VI) against Defendants Municipality, and Keating, Keiper, Judge, Case, and Cooper in

their individual capacities remain in this case.

An appropriate order follows.


June 23, 2009                                    /s/ A. Richard Caputo          
Date                                             A. Richard Caputo
                                                 United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DANIEL S. GRIFFIN,

    Plaintiff,

       v.

MUNICIPALITY OF KINGSTON, et al.,

    Defendants.

CIVIL ACTION NO. 3:08-cv-2290

(JUDGE CAPUTO)

## ORDER

**NOW**, this   23rd   day of June, 2009, **IT IS HEREBY ORDERED** that Defendants Municipality of Kingston, Paul Keating, Keith Keiper, Kingston Civil Service Commission, John Judge, Fred Case, and Nancy Cooper's Motion to Dismiss (Doc. 5.) is **GRANTED in part AND DENIED in part** as follows:

1.     Defendants' motion to dismiss Plaintiff Daniel Griffin's claims against Keating, Keiper, Judge, Case, and Cooper in their official capacities is **GRANTED**.

2.     Defendants' motion to dismiss Defendant Kingston Civil Service Commission as a party is **GRANTED**.

3.     Defendants' motion to dismiss Count I is **DENIED**.

4.     Defendants' motion to dismiss Count VII is **GRANTED**.

5.     Defendants' motion for a more definite statement of Count I is **DENIED as moot.**

                          /s/ A. Richard Caputo
                          A. Richard Caputo
                          United States District Judge